UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | | |
|---|---|---|---|
| CHARLES DOTSON, | ) | | |
| | ) | | |
| _Plaintiff,_ | ) | | |
| v. | ) | No. 1:07-cv-164 | |
| | ) | _Chief Judge Curtis L. Collier_ | |
| ROBERT STULTZ, RICHARD MABEE, | ) | | |
| RHEUBIN TAYLOR, OFFICER HICKS, | ) | | |
| BEVERLY COOPER, SHERIFF WILLIAM | ) | | |
| LONG; DR. JAMES CREEL, | ) | | |
| LORRIE MILLER, | ) | | |
| | ) | | |
| _Defendants._ | ) | | |

## MEMORANDUM

Plaintiff Charles Dotson ("Dotson") filed a _pro se_ civil rights complaint pursuant to 42 U.S.C. § 1983 (Court File No. 2). Dotson has made unrelated allegations against unrelated defendants. For example, Dotson makes a denial of medical care claim and conditions of confinement claim against some of the defendants and a denial of effective assistance of counsel against other defendants. Rule 18(a) provides "[a] party asserting a claim . . . may join as many claims as it has against an opposing party." Rule 20(a)(2) permits plaintiffs to include defendants in one action if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).

Thus, in violation of Rules 18 (a) and 20(a) of the Federal Rules of Civil Procedure, Dotson has crafted a single complaint against several defendants, some of whom are unrelated and for causes of action, some of which are unrelated.[1]  Dotson has not alleged that all of the defendants he named in the complaint participated in the same transaction or series of transactions or that a question of fact is common to all defendants.

Nevertheless, a review of the complaint reveals Dotson has failed to state a claim against any of the defendants.  Thus, for the reasons explained below, the complaint will be **DISMISSED** in its entirety.

I.     **Application to Proceed In Forma Pauperis**

It appears from the application to proceed *in forma pauperis* submitted by Dotson, that he lacks sufficient financial resources at the present time to pay the required filing fee of $350.00. Dotson, is not relieved of the ultimate responsibility of paying the $350.00 filing fee.  Since Dotson is incarcerated at the Hamilton County Jail in Chattanooga, Tennessee he is **ASSESSED** the civil filing fee of $350.00 under the Prisoner Litigation Reform Act, Pub. L. 104-134, 110 Stat. 1321 (1996), codified in 28 U.S.C. § 1915.  Dotson shall pay the full filing fee of three-hundred and fifty dollars ($350.00) pursuant to the Prisoner Litigation Reform Act, Pub. L. 104-134, 110 Stat. 1321 (1996), codified in 28 U.S.C. § 1915.

---

[1]     In *George v. Smith,* 507 F.3d 605, 607 (7th Cir. 2007), the Seventh Circuit cautioned "[u]nrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that this 50-claim, 24-defendant suit produced but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeal that any prisoner may filed without payment of the required fees.28 U.S.C. § 1915(g). George was trying not only to save money but also to dodge that rule.  He hoped that if even 1 of his 50 claims were deemed non-frivolous, he would receive no "strikes" at all, as opposed to the 49 that would result from making 40 frivolous claims in a batch of 50 suits."

Pursuant to 28 U.S.C. § 1915(b)(1)(A) and (B), the custodian of Dotson's inmate trust account at the institution where he now resides shall submit to the Clerk, United States District Court, 900 Georgia Ave., Room 309, Chattanooga, Tennessee 37402, as an initial partial payment, whichever is the greater of

    (a)    twenty percent (20%) of the average monthly deposits to Dotson's inmate trust account; or

    (b)    twenty percent (20%) of the average monthly balance in Dotson's inmate trust account for the six-month period preceding the filing of the complaint.

Thereafter, the custodian shall submit twenty percent (20%) of Dotson's preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds $10.00, until the full filing fee of $350.00 as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk of Court will be **DIRECTED** to send a copy of this memorandum and judgment to the Sheriff of Hamilton County; the Custodian of Records at the Hamilton County Jail; the Commissioner of the Tennessee Department of Corrections; and the Attorney General for the State of Tennessee to ensure the custodian of Dotson's inmate trust account complies with the portion of the Prison Litigation Reform Act relating to payment of the filing fee.

The agency having custody of Dotson shall collect the filing fee as funds become available. This order shall become a part of the inmate's file and follow the inmate if he is transferred to another institution. The agency having custody of Dotson shall continue to collect monthly payments from Dotson's prisoner account until the entire filing fee of $350.00 is paid.

Dotson will be **ORDERED** to provide the prison officials at any new institution with a copy of this order. Failure of the plaintiff to notify the new prison officials of this order and outstanding

3

debt, will result in the imposition of appropriate sanctions against plaintiff without any additional notice or hearing by the Court.

## II.    <u>Standard of Review</u>

*Pro se* pleadings filed in civil rights cases are liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers. *McNeil v. United States,* 508 U.S. 106, 113 (1993); *Boag v. MacDougall,* 454 U.S. 364, 365 (1982); *Pilgrim v. Littlefield,* 92 F.3d 413, 416 (6th Cir. 1996); *Jourdan v. Jabe,* 951 F.2d 108, 110 (6th Cir. 1991). However, *pro se* status does not exempt Plaintiff from the requirement that he comply with relevant rules of procedural and substantive law. *Hulsey v. State of Texas,* 929 F.2d 168, 171 (5th Cir. 1991); *Birl v. Estelle,* 660 F.2d 592, 593 (5th Cir. 1981). *Pro se* plaintiffs must comply with Rule 8 of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." *LRL Properties v. Portage Metro Housing Authority,* 55 F.3d 1097, 1104 (6th Cir. 1995). Although the standard of review is liberal, it does require more than the bare assertion of legal conclusions. *Lillard v. Shelby County Bd. Of Educ.,* 76 F.3d 716, 726 (6th Cir. 1996) (standard of review for dismissing a complaint pursuant to Fed. R. Civ. P. 12(b)(6)-failure to state a claim upon which relief may be granted); *LRL Properties,* 55 F.3d at 1103-04; *Allard v. Weitzman (In re DeLorean Motor Co.),* 991 F.2d 1236, 1240 (6th Cir. 1993); *Hartfield v. East Grand Rapids Public Schools,* 960 F. Supp. 1259, 1268 (W.D. Mich. 1997). Indeed, the requirement of liberal construction does not mean the court can ignore a clear failure in the pleading to allege facts which set forth a sufficient claim. *See Weller v. Department of Social Services for City of Baltimore*, 901 F.2d 387, 398 (4th Cir. 1990) (no claim stated where there were no allegations that the acts were pursuant to usage, custom, or official municipal policy). The

4

complaint must give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Lillard,* 76 F.3d at 726; *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir. 1994). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory[,]'" *Lillard,* 76 F.3d at 726 (citations omitted), and if the complaint fails to include the required allegations, a court is not required to construct claims or grounds for relief for a plaintiff. *See Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (It is not a court's duty to "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory[.]").

In addition, when considering a civil complaint filed by a prisoner, the Court has the responsibility to screen the complaint pursuant to 28 U.S.C. § 1915A and § 1915(e). Furthermore, 28 U.S.C. § 1915(e)(2) provides the Court must dismiss a case at any time if the Court determines it is frivolous or fails to state a claim upon which relief can be granted. *See McGore v. Wrigglesworth,* 114 F.3d 601, 608 (6th Cir. 1997).

## III.   Facts

Dotson claims he was seen by Physician's Assistant Robert Stultz ("PA Stultz") concerning his hernia. Dotson complains that PA Stultz told him he (Dotson) should not have gotten arrested because the county could not afford to pay for his surgery. Presumably relying upon the theory of *respondeat superior*, Dotson claims he wrote PA Stultz's superior, Dr. Creel, but received no response and Dr. Creel's refusal to respond amounts to negligence and deliberate indifference to his serious medical needs.[2]

---

[2]   Dotson does not claim he did not receive any treatment for his inflamed, painful hernia. Rather, he contends PA Stultz told him "that at present the county wasn't going to pay for any surgery." (Court File No. 2.) However, Dotson has neither alleged nor provided any proof that

5

In addition to making several factually unsupported claims attacking his conditions of confinement, Dotson alleges he was denied access to a law library or legal research.[3] Specifically attacking his conditions of confinement, Dotson claims that when he arrived he was forced to sleep on concrete in an overcrowded drunk tank for six days; "denied shower, hygiene items, not allowed to write the court or attorney, not allowed 1 hr. outside cell to exercise . . . threatened and hit by a [sic] inmate and by Guard "Mr. Hicks" for no valid reason human fecees [sic] on toilot [sic] a mad house[,] slept side by side with many others, Nurse Beverly Cooper failed to give me my physciogic [sic] medicine I'm on prozac, Hicks knocked me down . . ." (Court File No. 2).

Relying on the theory of *respondeat superior*, Dotson contends Hamilton County Attorney Rhueben Taylor ("Attorney Taylor") is responsible for ensuring that his rights are not violated by the County and Sheriff Billy Long ("Sheriff Long") is responsible for all the alleged constitutional violations by his employees.

Last are Dotson's unrelated claims against the unrelated defendants. Dotson alleges appointed counsel Richard Mabee ("Attorney Mabee") and appointed counsel Lorrie Miller ("Attorney Miller") rendered ineffective assistance of counsel when representing him in state court on criminal charges.

---

a physician had prescribed surgery for his hernia or that such was necessary.

[3]     Dotson's complaint fails to provide any supporting facts to supplement his claims, thus it does not appear he has fulfilled the pleading requirement of Rule 8 of the Federal Rules of Civil Procedure that a complaint should contain "a short and plain statement of the claim showing that the pleader is entitled to relief" Fed.Civ.R. 8(a)(2). Nevertheless, as discussed herein, the complaint will be dismissed on other grounds.

## IV. **Analysis**

### A. *42 U.S.C. § 1983*

To state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) he was deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States; and (2) the deprivation was caused by a person while acting under color of state law. *Flagg Bros. Inc. v. Brooks,* 436 U.S. 149, 155-56 (1978); *Brock v. McWherter,* 94 F.3d 242, 244 (6th Cir. 1996). To maintain a cause of action for damages under 42 U.S.C. § 1983, a plaintiff must also allege the defendant caused the plaintiff an injury and show actual damages. *See Carey v. Piphus*, 435 U.S. 247, 255 (1978); *Chatman v. Slagle,* 107 F.3d 380, 384 (6th Cir. 1997); *Zehner v. Trigg,* 952 F.Supp. 1318, 1321 (S.D. Ind.), *aff'd* 133 F3d 459 (7th Cir. 1997). Thus, to state a § 1983 claim, Plaintiff must allege sufficient facts that, if true, would establish he incurred an injury when the defendants deprived him of a right secured by the Constitution of the United States while they acted under color of law. *See Brock,* 94 F.3d at 244.

### B. *Identity of Defendants*

Plaintiff identifies PA Stultz, Dr. James Creel ("Dr. Creel"), Hamilton County Jail R.N. Beverly Cooper ("Nurse Cooper"), Officer Hicks, Sheriff Long, Attorney Mabee, and Attorney Miller as defendants. The Court will resolved the claims against the court appointed attorneys first, the *respondeat superior* claims second, and finally, the claims against the Hamilton County employees.

#### 1. *Court Appointed Attorneys*

Plaintiff has identified two court-appointed attorneys as defendants, claiming they violated his civil rights when they failed to conduct his criminal proceedings as he wished. Dotson

7

challenges Attorney Mabee's and Attorney Miller's representation of him in his criminal case in Hamilton County, Tennessee.

The United States Supreme Court has held "a public defender does not act under color of state law when performing a lawyer's traditional function as counsel to a defendant in a criminal proceeding." *West v. Atkins*, 487 U.S. 42, 49 (1988), quoting *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). A public defender, in his capacity as counsel to a defendant in a criminal proceeding, differs from the typical government employee or state actor.

> While performing his duties, the public defender retains all of the essential attributes of a private attorney, including, most importantly, his "professional independence," which the State is constitutionally obliged to respect. A criminal lawyer's professional and ethical obligations require him to act in a role independent of and in opposition to the State. . . . [W]hen representing an indigent defendant in a state criminal proceeding, the public defender does not act under color of state law for purposes of section 1983 because he "is not acting on behalf of the States; he is the State's adversary."

*West*, 487 U.S. at 49, quoting *Polk County*, 454 U.S. at 318-23.

Under 42 U.S.C. §1983, a plaintiff must allege he was deprived of a right secured by the United States Constitution or laws of the United States, and the deprivation was caused by a person while acting under color of state law. *See Flagg Bros. v. Brooks*, 436 U.S. at 155-57 (1978). Dotson's complaint fails to satisfy the second requirement under 42 U.S.C. §1983 because he has sued two court-appointed attorneys and it is well-settled that a public defender or a court-appointed defense counsel, while acting in that capacity, is not a state actor for purposes of section 1983. *See West*, 487 U.S. at 49; *Polk County*, 454 U.S. at 318-23. Consequently, these defendants, Attorneys Mabee and Miller, did not act under color of state law, and, therefore, Dotson has failed to state a claim under 42 U.S.C. §1983.

Accordingly, the Court concludes Dotson's complaint as to these two defendants lacks an

8

arguable basis in law and will be **DISMISSED** as frivolous. *See Neitzke v. Williams*, 490 U.S. 319, 326 (1989); 28 U.S.C. §§ 1915A and 1915(e).

### 2.     *Respondent Superior Defendants*

Dotson has not alleged any specific unconstitutional conduct by Sheriff Long, Attorney Taylor, or Dr. Creel, but rather, relies on the doctrine of *respondeat superior* to impose liability on these defendants. Dotson makes no claim against the Sheriff except to say he is responsible for his employees's actions and he knows the jail is illegally overcrowded. Dotson claims he wrote Dr. Creel "about Stultz's actions as complained there of" (Court File No. 2).[4] Likewise, Dotson contends he wrote Attorney Taylor about being denied legal research by the jail employees.[5]

It is well settled that a defendant cannot be held liable under 42 U.S.C. § 1983 on a *respondeat superior* theory of liability. *Rizzo v. Goode,* 423 U.S. 362, 375-76 (1976). The right to direct or control employees is, by itself, insufficient to impose liability upon a defendant for the unconstitutional acts of subordinates. *Lillard v. Shelby County Board of Education,* 76 F.3d 716, 727 (6th Cir. 1996). To state a claim under § 1983 against a defendant for supervisory liability, a plaintiff must allege a direct causal link between the acts of the subordinate and the supervisory defendant. *Hays v. Jefferson County, Ky.,* 668 F.2d 869, 872 (6th Cir. 1982).

The Sixth Circuit has defined the parameters of supervisory liability as follows:

---

[4]     Dotson has failed to make a constitutional claim against PA Stultz as he has failed to show any physician has determined he required surgery for his hernia or that surgery was actually required.

[5]     Dotson does not demonstrate, as he is required to do to make a constitutional claim, that the denial of the research denied him access to the Courts. *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (denial of an adequate law library or assistance not actionable unless prisoner shows the alleged shortcomings interfered with his pursuit of a legal claim). Therefore, his claim regarding the lack of a law library or legal research fails to state a constitutional violation.

9

> Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

*Taylor v. Michigan Department of Corrections,* 69 F.3d 76, 81 (6th Cir. 1995)(*quoting Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.), *cert. denied,* 469 U.S. 845 (1984). *But see Ashcroft v. Iqbal,* – U.S.–, 129 S.Ct. 1937, 1949 (2009) ("In a § 1983 suit or a Bivens action-where masters do not answer for the torts of their servants-the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct. In the context of determining whether there is a violation of clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose Bivens liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities.").

Under the Sixth Circuit's test, a supervisor may be held liable if he participated in or encouraged the specific instance of misconduct, or authorized or approved an unconstitutional act or procedure that resulted in a specific instance of misconduct by a subordinate. *See Hicks v. Frey,* 992 F.2d 1450, 1455 (6th Cir. 1993) (noting that an official may be held liable for failure to supervise and control subordinates even though the official was not directly involved in the specific incident of misconduct). The Sixth Circuit has not limited supervisory liability to situations where the supervisor has actual knowledge of the specific constitutional deprivation. Liability under § 1983 may be imposed on a supervisor regardless of knowledge of the specific incident of misconduct, where the supervisor fails to discharge a duty or adopts a policy that results in a constitutional violation. *See Taylor,* 69 F.3d at 81 (holding that issue of fact existed where prison

10

warden was charged with abandoning duty of adopting and implementing transfer procedure identifying inmates at risk for sexual assault); *Hayes v. Vessey,* 777 F.2d 1149, 1154 (6th Cir. 1985) (noting that supervisory officials are susceptible to liability under § 1983 for failing to discharge supervisory duties).

Dotson has not connected the alleged unconstitutional conduct of the subordinates to their supervisors. Dotson's allegation the supervisors ignored his letters protesting the alleged unconstitutional conduct is insufficient to demonstrate a direct causal link between the acts of the subordinate and the supervisory defendant so as to create liability under § 1983. *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999) (supervisors and administrators not liable merely because they failed to intervene or act upon prisoner's letter or complaint); *Yoder v. Seals*, 2009 WL 737099 (E.D. Tenn. Mar. 19, 2009) ("A combination of knowledge of a prisoner's grievance and failure to respond or remedy the complaint is insufficient to impose liability upon supervisory personnel under § 1983.") (internal quotations and citations omitted).

Not only has Dotson not raised a viable constitutional claim against any of the defendants he alleges directly violated his rights, as explained *infra* in this memorandum, he has not alleged Sheriff Long, Attorney Taylor, or Dr. Creel, in any way, acquiesced or participated in any of the alleged unconstitutional conduct. Dotson does not allege Sheriff Long, Attorney Taylor, or Dr. Creel encouraged the alleged misconduct, or authorized or approved an unconstitutional act or procedure that resulted in the alleged misconduct. Nor does Dotson allege Sheriff Long, Attorney Taylor, or Dr. Creel failed to discharge a duty or adopted a policy that resulted in a constitutional violation. Dotson has not alleged any acts committed by Sheriff Long, Attorney Taylor, or Dr. Creel, and he has failed to allege a direct causal link between the acts of the subordinates of these

11

defendants and these supervisory defendants, themselves. Most importantly, however, Dotson has failed to allege facts sufficient to show any of Sheriff Long's, Attorney Taylor's, or Dr. Creel's subordinates violated Dotson's constitutional rights. There is simply nothing in the complaint linking these supervisory defendants to any constitutional violations, much less any causal link of the kind necessary to state a claim for supervisory liability. Accordingly, the claims against Sheriff Long, Attorney Taylor, and

Dr. Creel will be **DISMISSED** for failure to state a cognizable claim pursuant to 42 U.S.C. § 1983. 28 U.S.C. §§ 1915A and 1915(e).

### 3. *Hamilton County Defendants*

Dotson has made claims against unidentified defendants in addition to suing specifically named employees at the Hamilton County Jail *i.e.*, PA Stultz, Officer Hicks, Ms. Susan, and Nurse Cooper. The Court now turns to those claims.

#### a. *PA Stultz*

Dotson claims he was seen by PA Stultz concerning his painful and inflamed hernia and was told he should not have gotten arrested because, at that time, the county was not paying for any surgery. Dotson claims PA Stultz was deliberately indifferent to his serious medical needs.

A violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment occurs when prison officials act with deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-04 (1976). To establish a claim of inadequate medical care in violation of the Eighth Amendment, a prisoner must allege acts or omissions demonstrating "'deliberate indifference' to a substantial risk of serious harm . . ." *Farmer v. Brennan,* 511 U.S. 825, 828 (1994)

(citation omitted). "Deliberate indifference" to a prisoner's medical need is demonstrated by proof that prison officials "intentionally den[ied,] or delay[ed] access to medical care or intentionally interfer[ed] with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976).

The deliberate indifference standard consists of both an objective component and a subjective component. Specifically, an actionable Eighth Amendment claim consists of two elements: (1) an objective element which requires proof that the medical condition was sufficiently serious, and (2) a subjective element which requires proof that the prison official acted with a sufficiently culpable state of mind, *i.e.*, deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825 (1994). Dotson's failure to provide factual support for his deliberate indifference claim has resulted in the absence of proof demonstrating an urgent serious medical need which required immediate treatment and the absence of facts showing defendant acted with a sufficiently culpable state of mind. Consequently, the absence of proof demonstrating a serious medical condition and the absence of facts demonstrating the requisite culpable state of mind have resulted in a failure to allege, much less demonstrate, a constitutional violation. A medical condition constitutes a serious medical need if it is one a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention, and if untreated could result in further significant injury or unnecessary chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Because Dotson has not alleged a serious medical need for the hernia surgery or provided any facts supporting an inference such surgery was medically necessary, his complaint regarding medical care at the Hamilton County Jail falls short of supporting a constitutional claim.

In summary, Dotson has not alleged a constitutional violation since he has not alleged a

13

physician prescribed surgery to treat his hernia, PA Stultz refused to provide any treatment for his hernia, PA Stultz failed to recognize the necessity of surgery for his hernia, or failure to provide the surgery resulted in significant injury or chronic and substantial pain. Dotson simply has not provided any facts demonstrating PA Stultz perceived a risk of harm and then disregarded it, thus, exhibiting deliberate indifference to Dotson's serious medical needs. *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (evidence must show "the medical need at issue is sufficiently serious"), *cert. denied*, 537 U.S. 817 (2002). Moreover, since Dotson has neither alleged that any physician had prescribed surgery for his hernia nor demonstrated such surgery was necessary, he simply has not provided sufficient information to establish the existence of a serious medical need for the surgery. Consequently, Dotson's general allegation's do not demonstrate PA Stultz was deliberately indifferent to his serious medical need. *See Estelle*, 429 U.S. at 106 ("In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to his serious medical needs.").

Dotson's complaint does not state an actionable Eighth Amendment violation based on the failure to provide medical care. Accordingly, Dotson's claim of deliberate indifference to his serious medical needs will be **DISMISSED** for failure to state a claim. 28 U.S.C. §§ 1915A and 1915(e).

b.      *Unidentified Defendant Who Denied Dotson Access to Court*

Dotson claims he submitted a legal research request to some unidentified person but was denied the requested legal research. To establish a violation of the right of access to courts, an inmate must establish prison officials failed to provide the assistance required by *Bounds v. Smith*, 430 U.S. 817 (1977), *and* the inadequacy hindered him in presenting a non-frivolous claim in court. *Lewis v. Casey*, 518 U.S. 343, 350-51 (1996)(emphasis added). An inmate does not have standing

14

to allege a constitutional deprivation of his constitutional right to litigate unless he has suffered an "actual injury." *Id.* at 349. Here Dotson has failed to allege how he has been harmed by the claimed lack of access to legal research. "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id.* at 351.

Accordingly, since Dotson has failed to show prejudice to any litigation, his claim for denial of access to the courts will be **DISMISSED** for failure to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915A and 1915(e).

c.    *Unidentified Defendants Concerning Conditions of Confinement*

Dotson makes the following claim about his conditions of confinement:

> Upon arrival 12-22-07 I was in a overcrowded drunk tank forced to sleep on concrete for 6 days, denied shower, hygiene [sic] items, not allowed to write the court or atty. not allowed 1 hr. outside cell to excersize [sic]-I'm a mental patient put in population was frightened-threatened and hit by a inmate and by guard "Mr. Hicks" for no valid reason human fecees [sic] on toilot [sic] a mad house slept side by side with many others. Nurse "Beverly Cooper" failed to give me my physiciogic [sic] medicines I'm on 'prozac'. Hicks knocked me down I still have headaches and in pain presently.

(Court File No. 2).

Dotson has raised some general claims concerning his conditions of confinement, but he has failed to identify any defendants in relation to these claims. The Court will consider the general claims against the unidentified defendants prior to addressing the specific claims against Officer Hicks and Nurse Cooper.

Dotson claims he was in an overcrowded drunk tank, forced to sleep on concrete for six

days,[6] "denied shower," denied hygiene items,[7] not allowed to write the court or counsel, not allowed one hour of exercise outside his cell,[8] was frightened in general population because he is a mental patient, and that the commode had feces on it. As explained below, Dotson's general claims are vague and factually unsupported; thus, they do not allege a constitutional violation. Furthermore, Dotson has failed to identify which prison official was responsible for these alleged deprivations and that the person possessed the requisite culpable state of mind.

The Fourteenth Amendment's due process clause protects pretrial detainees from cruel and unusual punishments, and the Eighth Amendment's cruel and unusual punishments clause protects those convicted of crimes from cruel and unusual punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979). However, "[a]n act or practice that violates the eighth amendment also violates the due process rights of pretrial detainees." *Martin v. Tyson*, 845 F.2d 1451, 1457 (7th Cir. 1988). To raise a viable Eighth Amendment jail-condition claim, plaintiff must show a deprivation of an identifiable human need—a deprivation of life's necessities, such as food, warmth, exercise, clothing, shelter, sanitation, medical care, or personal safety. *Wilson v. Seiter*, 501 U.S. 294 (1991); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Walker v. Mintzes*, 771 F.2d 920, 926 (6th Cir.

---

[6] The Sixth Circuit has ruled seven days without a mattress, sheets, or blanket was not deprivation of basic human needs and did not cause plaintiff to suffer serious harm. *Grissom v. Davis*, 55 Fed.Appx. 756 (6th Cir. 2003), *available in* 2003 WL 343248.

[7] Although the temporary deprivation of hygiene items is unpleasant, it does not violate the Eighth Amendment. *Siller v. Dean*, 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000) ("Given the brief span of time that Dean allegedly refused to permit Siller access to a shower and other (unspecified) personal hygiene items, *i.e.*, only six days, the conduct is not actionable[.]").

[8] The Constitution does not guarantee Dotson daily access to leave his cell. Although the Eighth Amendment does prohibit near-total deprivation of exercise without penological justification, *see Patterson v. Mintzes* 717 F.2d 284, 289 (6th Cir. 1983) ("It is generally recognized that a total or near-total deprivation of exercise or recreational opportunity, without penological justification, violates Eighth Amendment guarantees."), Dotson has not alleged such a circumstance.

16

1985). In addition to the plaintiff being required to show a specific deprivation of one or more identifiable human needs in order to prove an Eighth Amendment violation, a plaintiff must also show "a culpable state of mind on the part of [the defendants] prison officials. . . ." *Wilson v. Seiter*, 501 U.S. at 298-299. Liability cannot be predicated on mere negligence; the plaintiffs must, at a minimum, show deliberate indifference. Therefore, it is well settled that an Eighth Amendment claim based on prison conditions has an objective component, denial of "the minimal civilized measure of life's necessities," *Rhodes v. Chapman*, 452 U.S. at 347 (1981), and a subjective component of deliberate indifference.

The proper standard to apply to claims challenging conditions of confinement is the deliberate indifference standard to determine if the defendants acted wantonly. *Wilson v. Seiter*, 501 U.S. at 302-03. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the cruel and unusual punishment clause, . . ." *Hubbert v. Brown*, 114 F.3d 1187 (6th Cir. May 8, 1997) (Unpublished table decision), *available at* 1997 WL 242084, at *4(citations omitted). Deliberate indifference will be found if the defendants know of a substantial risk to an inmate's health or safety, yet disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 829 (1994). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 835.

To state a valid claim based on the conditions of confinement, a plaintiff must show an extreme deprivation. *Hudson v. McMillian*, 503 U.S. 1,9 (1992). Routine discomfort is part of the

17

penalty criminal offenders pay for their offenses against society. The Eighth Amendment requires prison officials to provide inmates with "a minimal civilized measures of life's necessities," and conditions of confinement which involve wanton and unnecessary infliction of pain will violate the Eighth Amendment. *Bellamy v. Bradley*, 729 F.2d 416, 420 (6th Cir.), *cert. denied*, 469 U.S. 845 (1984) (quoting *Rhodes v. Chapman*, 452 U.S. at 347). The conditions cited by the plaintiff do not appear to meet the "extreme deprivation" requirement, and there is nothing in the complaint to indicate these conditions inflicted wanton and unnecessary punishment upon the plaintiff. There is nothing in the complaint to indicate the factually unsupported alleged conditions injured the plaintiff.

Dotson has failed to allege sufficient facts to establish at least one of the named defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable steps to prevent the harm. Although the conditions he described were apparently unpleasant and uncomfortable, Dotson has failed to allege any deprivation so extreme that it violates the Constitution or sufficiently serious harm resulting from these conditions to meet the requirements of *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) ("Under the test we adopt today, an Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."), *also see Wilson v. Lynaugh*, 878 F.2d 846, 849 (1989) ("In sum, the Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience."). Not only does Dotson fail to identify who he claims committed these constitutional violations and that the unidentified defendant possessed the required culpability, he

18

fails to provide any factual support that would permit the Court to infer a constitutional violation.

In sum, Dotson has failed to allege that any named defendant acted wantonly or with a deliberate indifference to a substantial risk to his health or safety. Further, Dotson has failed to allege sufficient facts to support a constitutional violation. The conditions plaintiff complains about may have been inconvenient, uncomfortable, and unpleasant, but he simply has not provided any facts that demonstrate his welfare was at serious risk or he was denied the minimal civilized measures of life's necessities or that the conditions violated his Constitutional rights.

Accordingly, Dotson's general claims attacking his conditions of confinement against unidentified defendants will be **DISMISSED**. 28 U.S.C. §§ 1915A and 1915(e).

### d. Officer Hicks

Dotson is apparently bringing two claims against Officer Hicks. First, Dotson contends he was hit by an inmate, thus presumably contending Officer Hicks failed to protect him from violence. Second, Dotson claims Officer Hicks hit him for no valid reason, and knocked him down. Dotson claims he still suffers from headaches as a result of being knocked down. The Court will address his claim for failure to protect first.

### (1) Failure to Protect

Prison officials are bound by the Eighth Amendment to take "reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832. "[P]rison officials have a duty to protect prisoners from violence at the hands of other prisoners[,] and to protect inmates from unreasonable conditions that pose "a substantial risk of serious harm" *Id.* at 833-34. In addition, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability[.]" *Id.* at 834. A prison official violates the Eighth Amendment only when the alleged

19

deprivation is objectively, "sufficiently serious, . . . a prison official's act or omission [] result in the denial of 'the minimal civilized measure of life's necessities[,]" *id.* (citations omitted), and the prison official has a "'sufficiently culpable state of mind[,]' *i.e.,* one of 'deliberate indifference' to inmate health or safety." *id.* (citations omitted). Thus, Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

However, because Dotson failed to provide any factual support for this claim, he has failed to allege Officer Hicks possessed the requisite culpable state of mind or that Officer Hicks had the requisite knowledge of a risk of harm to Dotson. Dotson does not even claim Officer Hicks was aware the inmate hit him. Accordingly, because Dotson has failed to allege Officer Hicks was aware of and ignored an obvious, substantial risk of harm to Dotson, this allegation fails to raise an Eighth Amendment claim and will be **DISMISSED**. 28 U.S.C. §§ 1915A and 1915(e).

(2)     *Excessive Force*

Likewise, Dotson's claim that Officer Hicks hit him and knocked him down will be **DISMISSED** for failure to state a claim upon which relief may be granted because there are no facts before the Court which permits it to infer Officer Hicks possessed the requisite mental culpability. Dotson does not provide any facts explaining the circumstances under which the claimed acts occurred. For example, Dotson does not explain whether these alleged acts occurred when Officer Hicks was making a good faith effort to maintain or restore discipline, whether they were accidently committed, or whether he maliciously engaged in these alleged acts for the very purpose of causing harm to him. *See Hudson v. McMillian* 503 U.S. 1, 6 (1992) ("[W]e hold that whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual

Punishments Clause, the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.").

Although Dotson contends there was no valid reason for hitting him, he does not address Officer's Hicks reason for knocking him down or the circumstances surrounding the alleged incident. Nevertheless, stating there was no valid reason is insufficient to state an Eighth Amendment claim for excessive force because Officer Hicks' actions could have been applied in good faith or the result of an accident. The *Hudson* court instructed the extent of the injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary or whether it is evidence the defendant maliciously committed the act. *Hudson,* 503 U.S. at 7. In addition, the *Hudson* court observed:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. *See Johnson v. Glick*, 481 F.2d at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.

*Id*. at 9-10 (internal quotations and citations omitted).

In this case, Dotson does not provide any facts surrounding the incident when Officer Hicks allegedly hit him, and he has failed to provide any allegation he suffered any harm. Thus, he has failed to raise a constitutional violation. Likewise, Dotson has failed to provide any facts surrounding the incident when Officer Hicks allegedly knocked him down. Although Dotson claims he suffers headaches and pain, presumably from being knocked down, he has failed to provide any allegation indicating Officer Hicks intentionally knocked him down. Thus, not only has Dotson

21

failed to allege Officer Hicks possessed the requisite state of mind required for an excessive force claim, he has failed to allege he suffered anything more than a *de minimis* injury. There simply are no facts presented which permits the Court to infer Officer Hicks had the requisite culpable state of mind or that the alleged force was objectively harmful enough to be unconstitutional. Consequently, Dotson's vague and factually unsupported allegations fail to state an Eighth Amendment violation. Accordingly, Dotson's excessive force claims will be **DISMISSED** for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915A and 1915(e).

> *e.*    *Ms. Susan*

Next, Dotson claims he was illegally classified by Ms. Susan when she recommended he be housed on the sixth floor. Dotson claims he fears for his safety being housed on the sixth floor. Initially the Court observes Dotson has not sued anyone by the name of Ms. Susan. Moreover, prisoners have no statutory or constitutional entitlement to prisoner classification or rehabilitative programs. *Moody v. Daggett*, 429 U.S. 78, 88, n. 9 (1976) ("[N]o due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system . . . and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process."); *Hewitt v. Helms*, 459 U.S. 460, 466-67 (1983) (holding that there is no liberty interest in being confined in the general population rather than in the more restrictive atmosphere of administrative confinement); *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) ("'Inmates have no protectable property or liberty interest in custodial classifications.'" quoting *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998)).

Accordingly, since Dotson has neither demonstrated his classification resulted in a constitutional violation or provided a factual basis to support his claim that he fears for his safety, this claim will be **DISMISSED** for failure to state a claim upon which relief can be granted. 28 U.S.C. §§ 1915A and 1915(e).

*f.* *Nurse Cooper*

Dotson's last complaint is that Nurse Cooper failed to give him Prozac. Once again, Dotson has failed to provide any factual support for this claim. Initially the Court observes Dotson does not provide any facts to indicate he was prescribed Prozac. Nevertheless, even assuming Dotson was prescribed Prozac prior to his incarceration, his allegation that Nurse Cooper failed to give him the medication fails to state a constitutional violation. This is so because he has not provided any facts surrounding the alleged denial of his Prozac or the length of time he was denied his medication, thus he has failed to allege an Eighth Amendment violation.

Even assuming for the sake of discussion Dotson has alleged a serious medical need, he has failed to provide any facts which would permit this Court to infer the failure to give him Prozac amounted to deliberate indifference as there are no facts alleging Nurse Cooper knew of and disregarded Dotson's need for Prozac. Dotson does not claim he requested the medication and Nurse Cooper denied his request. Rather, he claims Nurse Cooper failed to give him Prozac. This simply is insufficient to state an Eighth Amendment claim. As previously explained, courts are not required to conjure up unpled facts. Consequently, Dotson has once again failed to provide any factual allegations from which deliberate indifference to a serious medical condition might be inferred. Accordingly, the claims against Nurse Cooper will be **DISMISSED** for failure to state a claim on which relief may be granted. 28 U.S.C. § 1915A and 1915(e).

**V.** <u>**Conclusion**</u>

For the reasons set forth above, the complaint will be **DISMISSED** *sua sponte* as frivolous

and for failure to state a claim on which relief may be granted under 42 U.S.C. § 1983.  28 U.S.C.

§§ 1915A and 1915(e).

An appropriate judgment will enter.

**/s/**_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**